

Mary Ann Hood
2003 Clawson Street
Alton, Illinois 62002
(618) 208-7997
In Pro Per

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Dana S. Frazier, Trustee, ) | Case No.: 09-31704 |
|     Plaintiff, ) | |
| ) | |
| v, ) | Adv. 11-3268 |
| ) | Adv. 11-3303 |
| ) | |
| Mary Ann Hood, ) | **NOTICE OF MOTION** |
|     Defendant, ) | **FOR SUMMARY JUDGMENT** |
| ) | |
| ) | **Date:**_____ |
| ) | **Time:**_____ |
| ) | **Place:**_____ |
| ) | **Hearing Date:**_____ |
| ) | |

**To all parties and their attorneys of record:**

PLEASE TAKE NOTICE that on a date determined by the bankruptcy court clerks, or as soon thereafter as the matter can be heard in The United States Bankruptcy Court for the Southern District of Illinois, 750 Missouri Avenue, East St.Louis, Illinois, 62001, Mary Ann Hood, Debtor, Defendant, Pro Se, and this motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure, and Section 437(c), on the grounds that there is no genuine issue as to any material fact, the trustee's actions have no merit, does move this Court for summary judgment in favor of Mary Ann Hood, Debtor, Defendant, Pro Se, and against Dana S. Frazier, Trustee, Plaintiff, and the defendant is entitled to judgment as a matter of law.

### UNDISPUTED FACTS

This motion is based on many accusations and alleged undisputed facts claimed by this trustee, such as copies of the defendant's Quit Claim Deeds, submitted by this trustee as evidence, along with other alleged "evidence", and is in dispute by the defendant because of unsubstantiated allegations, declarations, accusations, frivolous and

1

malicious adversary complaints claimed by the trustee, Dana S. Frazier, of the defendant's wrong doing. The trustee's actions constitute harassment and malicious prosecution of the defendant without cause, evidence, or irrefutable supporting documentation.

The main *undisputed* fact is that the defendant remains in the property, pays the annual real estate taxes for the property, has never vacated the property, and will continue to occupy the property and maintains the property as her permanent place of residence and has since May 31, 2005, 8 years ago. The defendant has never vacated or sold the property to her son or anyone else since taking possession on May 31, 2005, eight (8) years ago, nor has the defendant attempted to sell her home either by real estate broker/agent, or for sale by owner.

The accusations of the defendant's "wrong doing", alleged by the trustee, Dana S. Frazier, is unsupported by any legitimate documentation or any admissible evidence upon which her alleged claims can be made, are totally without merit, and fails to show the complaints to be for a legitimate and legal cause of action.  Submitting copies of the Quit Claim Deeds over and over again, attached to different pleadings throughout this case that are now approximately 7 years old proves nothing but that the defendant simply added her son's name to the deed, a legal and permitted act in the State of Illinois.

These allegations and accusations are mere suppositions, frivolous and malicious, of false, fabricated, accusations on the part of the trustee, Dana S. Frazier, and her attorney, Steven M. Wallace, against the defendant/debtor, and obviously lacks a legal, legitimate reason or cause for the accusations and allegations, all filed without any substantive proof, therefore has no legal cause of action. *The defendant has title insurance issued by Attorney's Title Guarantee Fund, Inc., an Illinois corporation, which guarantees a clear title to the property, properly executed and notarized according to the laws of the State of Illinois.*

Under these laws the defendant's deed  was not required to be recorded in any given, fixed, time or timely manner, did not need to be recorded in the Recorder of Deed's Office in Edwardsville, IL, because she did not SELL her property to an individual and thereby vacated the premises. She simply added her sons name to her property deed, properly executed and notarized as required by the June 1, 2009 Notary

Law passed by the Illinois General Assembly, Notary Public Act Amendments Effective
June 1, 2009 • Public Act 95-0988 - (SB 546).

The adversary complaints filed by this trustee are in retaliation in order to harass
the defendant for non-payment of demanded funds over and above what the trustee was
entitled and at the time the trustee demanded that payment be paid, consequently. because
of the defendants refusal to be extorted by Dana S. Frazier, this trustee then and therefore
filed frivolous and malicious lawsuits tantamount to malicious prosecution against the
defendant, (Case no. 11-3303, is beyond the statute of limitations and should have been
denied and/or dismissed as a matter of law by this court), wherein *both* 11-3268 & 11-
3303 are unfounded and unproved, and should have been denied and dismissed as a
matter of law in tandem.

NOTE:        The first complaint, 11-3268, was filed on 6/16/2011, four (4)
months AFTER the trustee was aware of the Line of Credit that had been arranged to pay
her and AECB, and the second complaint, 11-3303, was filed on 8/17/2011, six (6)
months AFTER the trustee was aware of the Line of Credit. This is a blatant vicious
abuse of power  by this trustee and her attorney, a total disregard and mockery of the
judicial system, and an abuse of process by this trustee manipulating the court system,
this court, how it is to be used, how it CAN be used and manipulated by unscrupulous
persons, and, that they FAILED to prove their allegations, and that there are no **genuine**
issues of material fact to be resolved.

The trustee's actions are overreaching, exploitation, and attempts of
misappropriation—conduct motivated by the basest of instincts, money, since the trustee
cannot prove her allegations and accusations against the defendant, proof of which is
contained in the trustee's response to the defendants First Request for Production of
Documents received on or about the 17th of April.   As usual, they have AGAIN
submitted copies of the same quit claim deeds used the past four years by this trustee as
her alleged sole documented evidence, and a statement that is virtually identical in all 28
requests of "The Trustee objects to Debtor's first (etc) request for the reason that it is
argumentative.  This response speaks loudly that they have nothing, and that it is nothing
but an admission they have no proof to support their adversary complaints against the
defendant *by the very absence of proof evidenced in their failure to submit any*

3

*indisputable documentation of any kind,* and making juvenile, immature, childish and poor excuses for their lack of responses to the request for discovery. There is no proof since the defendant is not guilty of committing a wrong doing. These adversary complaints filed by this trustee under these circumstances of retaliation and vengeance are clearly, and indisputably, an abuse of process and an abuse of power. **Absolute power corrupts absolutely!** This is indisputably fact. The defendant/debtor is clearly entitled to summary judgment in her favor.

These complaints are a result of American Express Centurion Bank filing an alleged claim against the defendant's Chapter 7 in the amount of $5021.99. When the alleged claim was filed the statute of limitations had run and the claim was out of time since the defendant had closed the account with American Express Company in early **June 2004.** The defendants Chapter 7 was filed **6-30-2009,** AFTER the S.O.L. had run for American Express to file an alleged claim. The account was opened in 1985 and closed in 2004 under the laws of the State of Missouri while the defendant was an established resident in Missouri; consequently, the laws for the State of Missouri prevail in this instance. The defendant did consult with an attorney, Richard A. Abrams, St. Louis, MO., at the request of Steven R. Clark, Courtney, Clark & Associates, Belleville, IL, former attorney of defendant, to confirm and verify the laws for Missouri did indeed prevail in this case. Attorney Abrams' expertise IS credit and collections with in excess of 30 years experience in that particular field in which he specializes and is an expert.

**American Express Company,** the entity with which the defendant/debtor did have an account from 1985 to 2004 did not file a claim against her, BUT, an entity the defendant had never dealt with, had never had an account with, American Express Centurion Bank, located in Salt Lake City, Utah, did file an alleged claim in the amount of $5021.99 that cannot be proved, however this court erred and did allow that claim to stand. Note: This is the ONLY alleged creditor in this Chapter 7 case no. 09-31704.

*American Express Company did submit to the defendant recently three (3) letters that declare indisputably that they do not have any records any longer of an account that is alleged to be still open and active with an unpaid balance against the defendant.* This account was paid, closed by the consumer (defendant) and their records haven purged since it is beyond the time frame wherein they maintain records. These

4

letters are included as exhibits herein.  This alleged claim by AECB should be dismissed as bogus and unproved and the FDIC, by whom AECB is governed in Salt Lake City, Utah since the ARE a bank,  states AECB will be investigated and will refund any money, and fined, if the defendant is forced to pay and they are found culpable in filing a false claim against the defendant.

The law firm of Becket & Lee, Malvern, PA, attorney for AECB failed to research their alleged claim as required to do therefore takes the posture that because the defendant made payments after the account was closed restarted the S.O.L.  clock, however, in the State of Missouri it does not, and, *the statute of limitations is 5 years for open ended accounts (credit cards) which had already run **prior** to the defendant filing a Chapter 7,* and prior to the alleged claim filed by American Express Centurion Bank, filed AFTER the June 30, 2009 date the bankruptcy was filed, therefore the laws for the State of Missouri takes precedence in this instance. The court erred by allowing this alleged, unproven claim to stand as submitted and not confirming the alleged facts presented by their attorneys to be fact. The defendant's attorney, Steven R. Clark, of Courtney, Clark and Associates, Belleville, IL did not provide adequate and proper representation of his client, the defendant, and did not dispute or object to the courts allowing the AECB claim to stand. Clark's interest was to pay Frazier an unearned, exorbitant amount of money ($13,000.00)  to 'settle' this case, and everyone would 'just go away'.   Mr. Clark failed completely in his fiduciary commitment to his client, lied to this court, and then withdrew from the case on the very same day, leaving the defendant without legal representation in court.

The defendant observed and heard Clark, as he was leaving the court room, approach Dana S. Frazier sitting at the attorney tables in front of the bench, asking her to come to the lobby outside the courtroom, and Frazier exclaimed as she followed Clark out of the court room, "there are no creditor's in this case?', assuming that AECB's alleged claim had been denied, however, Clark assured her there would be one creditor in the case upon which she would receive payment. Frazier met with Clark in the lobby where he again violated his fiduciary commitment by informing Dana S. Frazier that the defendant was considering filing a lawsuit against L. James Struif for his violations that equate to legal malpractice in the Chapter 7, case no. 09-31704.

## STATEMENT OF FACTS

1. In early 2009 the defendant conferred with attorney L. James Struif concerning alleged creditors that had made bogus, fabricated and unsubstantiated claims listed in her credit bureau reports. These creditors were bogus. The defendant asked Mr. Struif the best way to remove these from the credit bureau reports, that she had disputed them with the bureaus and her dispute was reflected in the reports. Mr. Struif advised filing a Chapter 7 bankruptcy. The defendant knew these alleged creditors would disappear/withdraw if challenged and they learned they had to prove their allegations of an alleged debt owed. Of the seven (7) that filed alleged claims, they ALL withdraw except AECB. The defendant never had an account with AECB and AECB did not exist, was not formed or a corporation,   until years AFTER the defendant had an account with American Express COMPANY.

The defendant did not find until too late that attorney Struif had deliberately lied and withheld critical information from the defendant that would have allowed the defendant to make an informed decision as to whether or not to file a bankruptcy. **IF** the defendant had been truthfully informed and given the required information by her attorney, a bankruptcy would never have been filed. Mr. Struif knew, and had in his possession, all copies of any and all Quit Claim Deeds concerning the property known as 2003 Clawson St., Alton, IL. 62002. When confronted with the errors and omissions Struif's excuse, via a letter received by the defendant, was "I just want the clients to be 'comfortable' when filing a bankruptcy." He simply lied and withholds critical information  from clients hoping they would never find out. Mr. Struif informed the defendant that "women" could not understand bankruptcy therefore he did not go into lengthy explanations or provide required information as a reason for his lack of proper communication with a client.

There was never any question by law or otherwise as to the legitimacy and validity of these deeds up to and through the 341 Hearing the following August with Laura K. Grandy, the first trustee assigned to this case,  no. 09-31704, including up to the current date.

The Chapter 7 was ultimately filed by Struif without giving the defendant a copy of the schedules, consequently the defendant was not aware of the many errors and

6

omissions contained in these schedules filled out by Struif and his secretary, Susan
Bazzell, who, the defendant discovered, is Struif's daughter. American Express Company
was from very old records in the defendant's possession. The defendant had not been sent
any statements from American Express Company since June 2004. The defendant was
not informed this old information that was submitted would be USED as a legitimate
alleged claim. Struif did not inform the defendant the alleged debts could be disputed in
the schedules, consequently, the defendant did not dispute any debts as she would have
had she been properly and duly informed by this attorney as was his responsibility
towards the client, and in which he deliberately failed to do by 'wanting his clients to
just be 'comfortable'. The defendant was subjected to making uninformed decisions and
the last four years have been a disastrous result of those uninformed decisions because of
L. James Struif.

It is and was these errors and omissions that created the controversy in this case
that currently exist. The case was filed on **June 30, 2009**. This is an indisputable fact.

2. The defendant states and affirms that early 2006 she was diagnosed with
Ischemic Cardiomyopathy, subject to Sudden Death, Congestive Heart Failure (CHF).
By June 2006 she had undergone **three (3)** separate corrective heart surgery procedures.
On or about early 2006, the first of two (2) stints were implanted in an emergency
situation, one immediately and the second the next morning, wherein the defendant was
transported via ambulance from the doctor's office to the ER at BJC, Kingshighway, St.
Louis, MO., followed by one (1) Guidant Pacemaker/Defibrillator implant in the upper
left chest to control the defendant's heart in June 2006. These procedures are all a matter
of hospital medical records. These are indisputable facts.

3. The defendant had no life insurance and in June 2006 prepared her Last Will
and Testament leaving her home to her son, Daniel J. Wehrle, so he could sell the house
to pay the defendants final expenses and burial, however, there was a 'chance' in Illinois
the Will could go through probate which could delay the selling of the home to cover the
defendants burial and final expenses. The defendant's children can not afford the
defendant's burial and other costs.

4. For this reason, *and for this reason ONLY*, the defendant had been advised to
execute a Quit Claim Deed, executed and notarized on **JUNE 25, 2007** that would

7

transfer her interest in the property to that of her son by putting her sons name on the deed so he could sell the home and avoid probate, however, the defendant quickly found that was not the correct way to handle the situation, consequently did execute a <u>second</u> Quit Claim Deed, executed and notarized on **JULY 25, 2007, exactly 30 days later,** that would put the property in the names of both the defendant and her son with rights of survivorship, which would accomplish the goal of avoiding probate at the time of the defendants death, with the defendant retaining the property as her permanent residence, which she does to this day. (This second deed was executed exactly **30 days** after the first one only because the defendant and her son live in two different states and the documents had to be mailed back and forth).

    5.  The defendant states and affirms that never at any time did she SELL her property to anyone, including her son. It was then, as it is now, her permanent residence, and occupied solely by the defendant. It is now approaching the seventh (7th) year since the first Quit Claim Deed was executed and the debtor still maintains her residence in the property in question. These first two deeds were executed and notarized in excess of two years *before* the filing of the Chapter 7 bankruptcy on **June 30, 2009.** This is an indisputable fact. This is approaching the 7th year since the initial Quit Claim Deed of 6/25/07. The defendant received a standard discharge on 10/27/2009, four (4) years ago. These are indisputable facts and a matter of record.

    6.  In hearings on June 21, 2010 and again on June 30, 2010 after Dana S. Frazier has been appointed as trustee to take over the case from Laura K. Grandy who had resigned to assume the position of Chief Judge in the Southern District of Illinois Bankruptcy Court, East St. Louis, Il., in May 2010, the trustee disputed the attempt the defendant had made to correct some of the errors and omissions created by L. James Struif and his secretary, Susan Bazzell, when the schedules had been initially prepared in Struif's office, BY Susan, on the defendants rights to her homestead allowed by the State of Illinois. The trustee Frazier accused the defendant of not recording the second Quit Claim Deed in a timely manner of when the trustee, Frazier, **thought and so testified** it must be recorded. Dana S. Frazier is wrong! This second deed was recorded on March 3, 2010. Frazier did NOT research her facts prior to making an accusation and allegation against the defendant, and, if she had done the proper research she would have found

there is **NO recordation act in the State of Illinois, and, Hood did not SELL her property, consequently, recording the deed was not required since the property was not changing owners.** This court erred in not <u>confirming or researching Dana S. Frazier's declaration **prior** to ruling</u> in the trustee's favor, with the court accusing and alleging he believed the defendant was 'attempting to manipulate the court', and with bias and apparent dislike of the defendant, did deny the defendants rights to her homestead without an actual violation by the defendant, or due cause to do so.   **IF** the court had confirmed Frazier's statement it would have discovered that the Illinois General Assembly passed a Notary Law in **<u>June 1, 2009</u>** that states a properly executed and notarized deed is a legitimate, legal and binding deed WITHOUT being recorded.

The ONLY time a deed MUST be recorded is when a property is SOLD in order to establish the seller is the rightful owner and has a right to sell the property, and nothing more.  The defendants' deeds are valid, properly executed, and notarized documents, which is all that is required in Illinois.  If the property is exchanging hands between the current owner and another person that is <u>buying</u> the property, then that deed becomes a Warranty Deed and transfers ownership, with the current owner vacating the property after the sale is closed.  Obviously this is not the case with the defendant's property in question.  It has been approximately <u>seven years</u> and the defendant still remains in the property as her permanent residence; still pays all taxes, and the property in question is the defendants' permanent place of residence and has been since May 31, 2005.  The court gravely and unfairly erred by denying the defendants rights to her homestead as granted by the State of Illinois This ruling must be reversed thereby granting the defendant her lawful rights.

See<u>: **Public Act 095-0988**</u>

**Be it enacted by the People of the State of Illinois, represented in the General Assembly:**

Section 5. The Illinois Notary Public Act is amended by changing Sections 3-101, 3-102, 3-104, and 6-102 as follows:

(5 ILCS 312/3-101)   (from Ch. 102, par. 203-101)

(1) "Document of Conveyance" shall mean a written instrument that transfers or purports to transfer title effecting a change in ownership to Residential Real Property, excluding:

(i) court-ordered and court-authorized conveyances

of Residential Real Property, including without
limitation, quit-claim deeds executed pursuant to a
marital settlement agreement incorporated into a
judgment of dissolution of marriage, and transfers in
the administration of a probate estate;

    (ii) judicial sale deeds relating to Residential
Real Property, including without limitation, sale

deeds issued pursuant to proceedings to foreclose a
mortgage or execute on a levy to enforce a judgment;

    (iii) deeds transferring ownership of Residential
Real Property to a trust where the beneficiary is also
the grantor;

    **(iv) deeds from grantors to themselves that are
intended to change the nature or type of tenancy by
which they own Residential Real Property;**

    **(v) deeds from a grantor to the grantor and another
natural person that are intended to establish a tenancy
by which the grantor and the other natural person own
Residential Real Property; and**

Illinois Code §735-5/12-901-904

7. The defendant had terminated the services of Jim Struif in November 2009, five (5) months after she had retained him, and retained Steven R. Clark, Courtney, Clark & Associates, Belleville, IL in <u>October</u> 2009. The defendant gave Clark a copy of a letter that the defendant had prepared for Laura K. Grandy at the suggestion of Jim Struif under the signature of Struif, which Struif had not used, and now Clark wanted the letter in order to change the 'sender's name on the letter to his as if HE had written it to Grandy. The defendant gave the letter to Clark to use. After Frazier had been appointed trustee Clark contacted Dana S. Frazier to discuss the case. Frazier informed Clark she would take $13,000.00 to 'settle' the case and 'just go away' and close the file. Clark informed me of this conversation. I declined this settlement offer since Frazier, by rules and regulations for trustees, was entitled to approximately $1,255.50 commission, not $13,000.00. This was clearly an attempt to extort by Dana S. Frazier. This would be her first effort to extort. *It was after this conversation that the defendant learned that Clark was listed as a trustee for the Southern District of Illinois, but had failed to inform me, clearly a conflict of interest and he should have recused himself and refunded the*

*defendants $2500.00 paid to Clark as his fee. However, he did not do what he was*
*legally obligated to do.*

Steven R. Clark, defendants' attorney, filed an Application for Compensation on 3/22/2010 for additional attorney fees over and above the $2500.00 already paid, and without the defendants' knowledge, agreement, or consent. When the application for compensation was discovered by the defendant her Affidavit to rebut the application was filed. Clark's office had been sent a copy of the affidavit by the court but Clark claims he had lack of knowledge until Clark was informed of the defendants' affidavit by the <u>court</u> clerk sitting directly in front of the judges bench immediately following the hearing of 9/20/10, whereupon Clark filed a motion to withdraw on October 12, 2010. A hearing was scheduled for October 25, 2010 to discuss other issues and the Motion to Withdraw. The judge allowed Clark to withdraw AFTER making an insulting and degrading comment to the defendant of 'oh, you want him to stay but you don't want to pay him', another indication of prejudice and bias against the defendant by the court. The court did not allow the defendant to testify that she had already paid Clark $2500.00 fee to take over the case, and, acting as Clark's legal secretary, had done ALL of the legal work on the case for Clark, did the research for Clark, and prepared the pleadings and motions on the case FOR Clark, then forwarded the legal documents to Clark's office via email attachments to be e-filed under Clarks name. The courts comment was totally unwarranted, unjustified, degrading, biased and prejudicial against the defendant without cause.

The defendant has undisputable proof via emails dating from 11/4/09 up to 11/8/2010, between the defendant, Steven R. Clark and his office, wherein the defendant had prepared and had sent to Steven R. Clark as email attachments **all of the pleadings, motions and other legal documents** filed in this case, **which proves beyond doubt the defendant in the capacity of legal secretary did the legal work and research concerning the case** for Steve Clark, plus paid him a fee of $2,500.00. Mr. Clark's portrayal as a financial fee victim is totally fabricated. Copies of the original pleadings and legal documents remain saved on the defendants' computer and will remain as such and are available for review. This is an indisputable fact.

The defendant did the legal secretarial work for Steven R. Clark, without pay of any kind. This is indisputable and a matter of personal, computer, and court records. The attorney Clark acted as the victim in this case in the hearing.

8. While still in the court room after the hearing on 10/25/10, Dana S. Frazier confronted the defendant in the spectator's area and demanded the defendant pay her $7000.00 within one week or the trustee would file a lawsuit against the defendant and her son. The defendant said she would try to obtain financing to pay the trustee and discussed the fact she had to use the property as collateral for any loan. The trustee approved using the property. The defendant emailed the trustee later and asked what if it took longer than one week to obtain financing and the trustee, Dana S. Frazier, stated that as long as she knew the defendant was trying to obtain financing then she would wait before filing her lawsuit against the defendant and her son. This proved to be a lie.

a. The defendant kept the trustee informed as to her progress and on or about January 26, 2011 she obtained a Line of Credit which was duly recorded on **February 9, 2011** with the Recorder of Deeds office in Edwardsville, IL against the property with a closing cost of $3348.00. This line of credit is a matter of public record. The trustee was immediately informed of the line of credit now available to pay AECB and her commission; however the defendant's information was ignored by the trustee. Then, on May 10, 2011, the defendant received a letter demanding $6800.00 from the defendant within 10 days. The defendant responded with a letter and the matter remained unsettled, and on June 9, 2011 the trustee filed her application to retain Steven M. Wallace as her attorney AFTER she had a discussion with Mark Skaggs of the US Trustee's office in Peoria, IL wherein she stated that she needed to file a complaint for fraudulent transfer before the statute of limitations had run out. Dana S. Frazier did NOT inform Mark Skaggs the defendant had arranged the Line of Credit to pay the alleged claim and her, consequently on June 16, 2011 the trustee filed her first complaint, case no. 11-3268 for alleged fraudulent transfer, KNOWING that funds were available to pay her and AECB, the only creditor, in the amount of $5021.99. The Line of Credit was available four months PRIOR to the trustee filing the first frivolous and malicious adversary complaint, case no. 11-3268, June 16, 2011, against the defendant in spite of the fact the defendant had informed the trustee funds were available pay the alleged claim

and the trustee, a deliberate effort to harass the defendant and to charge additional and unnecessary expenses, fees and other costs. This was an opportunity for the trustee and her attorney to create unnecessary expense, fees, and other fabricated alleged charges for 'services rendered' and they took advantage of that opportunity to just under $25,000.00.

   b. The defendant submits that the 'evidence' submitted by plaintiff trustee, Dana S. Frazier and her attorney, Steven M. Wallace, in these adversary complaints does not even come close to meeting the legal and evidentiary requirements for this court to grant a ruling in their favor. However, from what has occurred in the court hearings it is blatantly obvious and clear from the rulings the court had never read the defendants former pleadings and motions prior to the hearings wherein the defendant has testified on several occasions funds had been obtained to pay the claim, and also referenced and stated in pleadings filed with this court, or, had requested complaints be dismissed.

   c. The defendant's motions and pleadings were denied in spite of the defendant's testimony to the court and referenced in the defendants pleadings filed with this court that funds had been made available to pay the alleged claim. As evidence of the court not reading the defendants pleadings and motions, the court had no knowledge the defendant had filed a Motion for Leave to Appeal on September 2, 2012, which is a matter of court dockets and court records. It was obvious and blatantly clear in a later hearing in November 2011 the court knew nothing about the Notice of Appeal even though the court had been notified by the defendant having filed all necessary documents of which is provided the judge on this case by the court clerks. This failure of the court was compounded by the fact that attorney Wallace, when asked by the court if the case *was* on appeal, pretended and committed perjury when he testified he didn't know about an appeal and stated he would 'check it out' and if found to be accurate he would file a motion to dismiss'. It is noted the court did not query the debtor/defendant IF she had filed a notice of appeal, only attorney Wallace who lied and denied knowledge. Attorney Wallace and the trustee were the **FIRST** to be notified by US Mail with a Notice of Appeal and they DID receive the documents. These are indisputable facts and a matter of court records and court hearing transcripts and recordings.

   d. This case has been deliberately extended by more than two years by this trustee and her attorney AFTER funds were available to pay the alleged creditor and the

trustee at a closing cost of **$3348.00**, obtained ONLY because this trustee, using threats of lawsuits against the defendant and her son, made her demand that the defendant obtain financing, on 10/25/2010. The defendant obtained the financing yet this trustee filed her lawsuits anyway – a blatant abuse of power and of process.

This case should have been settled, finalized and closed immediately following 2/9/2011 when the Line of Credit was recorded as a matter of public record and available to pay AECB and the trustee. It is now 2013. The trustee was not interested in closing this Chapter 7 until she was paid the unearned amounts Dana S. Frazier has attempted to extort from the defendant on more than one occasion.

Because of this failure Dana S. Frazier was determined to put the defendant into a financial bind by filing frivolous and malicious complaints which amounts to nothing but malicious prosecution against the defendant, providing an avenue for the trustee's attorney to run up unwarranted and fabricated, bogus, attorney fees of $13,613.30 to-date, and the trustee could attempt to claim the defendants home, sell it to earn additional 'commission' to which she believes is her due, however unfounded, frivolous and malicious.    This is clearly an abuse of power and of the legal system by both Dana S. Frazier and Steven M. Wallace.  It is clearly malicious prosecution, unwarranted, without justification, against the defendant Mary Ann Hood, which is a violation of the Illinois Rules of Professional Conduct as referenced below:

> 1.    conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Rule 8.4(a)(4) of the Illinois Rules of Professional Conduct (1990); and
> 2.    conduct which tends to defeat the administration of justice or to bring the courts or the legal profession into disrepute.

The defendant confirms this with emails and correspondence exchanged between Frazier and the defendant following a conversation reiterating the demand and order made upon the defendant on 10/25/10. This is an indisputable fact.

9.  In the very same hearing of October 25, 2010 the court erred by allowing American Express Centurion Bank to stand as submitted. The defendant, through her attorney at the time, had testified that the account was fabricated and false; that she had never had an account with AECB but the court allowed it stating the American Express Company credit card was all part of the same 'family', which it is not!  AECB is a

14

BANK and falls under the FDIC guidelines for the State of UTAH. American Express Company is not. Again, the court did not confirm the facts and claim as a matter of law upon which a claim could be allowed in this matter. Had the court confirmed the law governing the matter before its ruling it would have found that defendant's accounts were closed in June 2004 with American Express Company **and the account is closed, paid, and no longer exist because American Express has purged their records.** See evidence submitted by the defendant and attached to this motion from American Express Company. This is a scam perpetrated by American Express Centurion Bank and with whom the defendant has never had an account. This alleged claim is bogus and should be dismissed. The court erred.

    10.  From the time the defendant had closed the accounts American Express Company had never sent any additional statements to the defendant. The Chapter 7 was filed in excess of five (5) years LATER. *American Express Centurion Bank's Proof of Claim is beyond the statute of limitations for Missouri and Illinois for open end accounts – credit cards, and should have been denied as a matter of law, however, the court allowed the claim.* AECB is a bank and this was not a loan consequently the statute of limitations is five (5) years, not what the court and AECB's attorneys alleged as true and accurate. Since AE Company never forwarded any statements the only document the defendant had was a copy of her credit bureau report which was submitted to the court as evidence. Again the court erred and this evidence was ignored and discounted by the court. When the defendant requested American Express Company to forward copies of any and all statements, and had made this request on three (3) separate occasions, they were never forwarded to the defendant even after the three (3) requests. The defendant contacted the AE Company corporate office and was informed they did not have any statements to send to the defendant. **The defendant then contacted the FDIC in Salt Lake City, Utah, where the headquarters of American Express Centurion Bank is located and filed a complaint on AECB's refusal to furnish statements.

    a.  The FDIC, after a period of time, obtained alleged "statements" and forwarded them to the defendant. The statements forwarded were fabricated and manufactured statements by AECB and not provided the defendant from American Express Company which was blatantly obvious since they were for the two years AFTER the defendant's

cards had been cancelled and the accounts were paid and closed. There were no signed
sales receipts submitted, or any other evidence to prove purchases were made by the
defendant, nor were any statements submitted during the time the accounts were open and
active or any statement during the life of the credit cards as open accounts, not even one
sales slip. *The defendant contacted AECB legal department in Salt Lake City, Utah,
and they admitted they had no records and had sent what they could 'put together'.*

AECB has never substantiated the claim and there is no proof of the alleged
amount being due and factual or even close to being accurate. What is totally uncanny is
the fact that the amount claimed as 'owed' matched perfectly the amount listed on the
bankruptcy schedules that was gleaned from old, obsolete credit report. This court ruled
to allow the claim in favor of AECB in spite of their inability to submit actual,
indisputable, substantive, proof of a claim of any kind. It is the opinion of the defendant
Hood, the court is biased and prejudiced against the defendant. The court records support
this opinion since the defendant's motions and pleadings have all been denied.

b. The defendant's account with American Express Company was opened in
February 1985. AECB submitted an 'agreement' to the court dated 2005, a full year
after the defendant's accounts were closed and *20 years AFTER the defendant opened the
account with American Express Company* as 'proof' an agreement existed between the
defendant and the creditor, however, the ONLY legitimate agreement existed in 1985, not
2005, a 20 year difference in time and agreement revisions. The defendant has never
even seen the alleged agreement until this case.

The defendant states and affirms she has never done business with or had an
account with American Express Centurian BANK! IF AECB can show evidence of an
account with them showing activity of the defendant using the bank account by deposits,
withdrawals, etc., then let them submit proof or dismiss their claim against the defendant.
This alleged creditor should NEVER have been allowed to stand. These are undisputed
and indisputable facts. The defendant had no agreement with AECB at any time. An
alleged 'agreement' dated 20 years AFTER the fact is NOT evidence of a contract
between the defendant and AECB. They cannot produce any signed documentation, sales
slips, or indisputable evidence to prove their claim. It is bogus. This claim should be
reversed and dismissed as invalid and unproved. **The defendant has enclosed copies of**

16

**three letters from American Express Company stating unequivocally and confirms this former account no longer exists, the records have been purged by American Express Company, consequently AECB has no legitimate claim as they allege.** This claim should be forthwith dismissed as bogus, misleading and unfounded. The defendant has never had an account with AECB as alleged by AECB. AECB used figures reflected on the defendant's schedules that is unproved and unverified and never associated with AECB and from an old, obsolete credit report.

11. The defendant has seen or experienced evidence that show a pattern of behavior or ruling in a manner which would lead a reasonable person to believe they are prevented or hindered from receiving a full, fair, impartial hearing, or the full, fair, impartial administration of justice in this court. A court should faithfully and consistently adhere to their oath of office and aggressively pursue justice for ALL. Anything less is unacceptable. Integrity first, Service before self, and Excellence in all we do. The court docket and court records will support the defendant's allegation and claim.

12. In violation of Rule 3.3(a)(1) of the Illinois Rules of Professional Conduct (2010), plaintiff's in this case have exhibited conduct which tends to defeat the administration of justice by knowingly making false statements of fact or law to a tribunal; and

in violation of Rule 8.4(c) of the Illinois Rules of Professional Conduct (2010), conduct involving dishonesty, fraud, deceit, and misrepresentation, and

in violation of Rule 8.4(d) of the Illinois Rules of Professional Conduct (2010), conduct that is prejudicial to the administration of justice; and

conduct which tends to defeat the administration of justice or to bring the courts or legal profession into disrepute.

conduct that exhibits immature, juvenile and childish behavior that makes a mockery of the judicial process and legal profession by their responses received on April 17, 2013 to the defendant's First Request for Production of Documents and Discovery, submitted to the plaintiff on March 14, 2013 containing 28 specific, succinct, concise, and explicit, comprehensive requests that were answered by the plaintiff in 28 responses of "The trustee objects to debtor's first (etc) request for the reason that it is

argumentative, vague and ambiguous" and submitting, again, the very same alleged 'proof' they have used for the past four years.

It is therefore deemed admitted by the plaintiff they have no evidence or proof against the defendant of any wrong doing, consequently the defendant is granted her right to summary judgment in this case no. 09-31704, that incorporates adversary complaints 11-3268 filed June 16, 2011, and, 11-3303 which was filed August 17, 2011 and beyond the statute of limitations that ended on June 30, 2011 wherein the court erred and the complaint should have been dismissed as a matter of law.

13. The trustee and her attorney are in violation of the defendant's Civil Rights to deny her right to a fair and unbiased day in court as guaranteed by the State of Illinois, from the trustee and her attorney harassing the defendant with and by filing frivolous and malicious prosecutions, unfounded, unsupported, adversary complaints beginning more than four (4) months AFTER the defendant had informed the trustee, Dana S. Frazier, that funds were available to pay the one creditor, AECB  in the amount of $5021.99,  and available immediately following February 9, 2011.  There is no doubt the trustee, Dana S. Frazier and her attorney, Steven M. Wallace, have deliberately caused excessive and unnecessary expenses, fabricated overbilling of the unfair and unreasonable attorney fees in their efforts to extort as much money as they possibly can by filing frivolous and malicious, unfounded, unsubstantiated, misrepresented, adversary complaints against the defendant they are unable to prove. They have never submitted any proof, evidence, supporting documentation of their claims, accusations and allegations against the defendant, only tired rhetoric, hyperbole, and innuendo, unfounded over a period time accompanied by the very same copies of documents they've used from the beginning alleged to be 'proof', that is soon to be in its fourth year of this case, and, even after receiving a First Request for Production of Documents and Discovery on March 14, 2013, that contained 28 clear, concise, succinct, comprehensive, requests,  the trustee and her attorney failed to provide any proof or indisputable evidence of wrong doing by this defendant, but responded with a statement of "The Trustee objects to Debtor's first (etc) request for the reason that it is argumentative, vague, and ambiguous" 28 times, from the

first request to the twenty-eighth, and attached the very same documents they've used all along in this case.

14.  The defendant has had two ineffective assistance of counsel in the handling of this case. The first, L. James Struif, lied to the defendant, withheld critical bankruptcy law information that would have prevented the case being filed, made many errors and omissions in the preparation of the schedules without the defendants knowledge until too late; second, Steven M. Clark, also listed as a trustee in the courts records which was a definite conflict of interest by never revealing to defendant he was listed as a trustee, and whose sole purpose was to collect money for both himself and the trustee, Dana S. Frazier, by early settling of the case provided the defendant paid out exorbitant fees to each, unearned, and outside the legal scope to what they were entitled.

The defendant, *acting as Clark's legal secretary throughout his representation, prepared all of the legal documents for Clark to file in the case, not Clarks office or secretary.* These pleadings and motions were sent to Clark via email attachments, to be filed with the court under Clark's name. This is an indisputable fact. The defendant has the original documents saved on her personal computer located in her home. When the defendant requested her legal file from Steven R. Clark he refused to relinquish the file, stated <u>he</u> would 'go through the file' and copy some documents <u>he</u> selected from the file and the defendant would be required to <u>pay</u> approximately $85.00 to Clark, by cash or money order, for those copies. The defendant declined. This information is available for review in emails exchanged between Clark and the defendant which is indisputable fact.

15.  The defendant alleges she has offered to settle this case on more than one occasion, has gone to extra effort to make the funds available the trustee, Dana S. Frazier, demanded be obtained at a cost of $3348.00, thereby increasing the defendants debts by that much over and above the $5021.99 claimed by AECB. The defendant alleges that in spite of her efforts to settle and pay the claim it is ignored by the trustee who, within 4 months after she was informed funds were available, did file frivolous and malicious prosecution complaints against the defendant because the defendant refuses to be extorted money that is unearned and paid to this trustee, Dana S. Frazier, and now her attorney, Steven M. Wallace, who has submitted an obviously fabricated itemized billing statement that is blatantly overbilled alleging services never rendered or claimed to have

been rendered, all without actual proof those services were provided. If the attorney Wallace can prove his allegations and claim then he must submit indisputable proof of the work he alleges he performed, per line item, per service rendered, per time expended for each claim service. The attorney has not provided this information. (See copy of alleged billing statement from Steven M. Wallace in the amount of $13,613.30)

16. That this very same attorney did arrange and hold a deposition in November 2012 to query the defendant/debtor with the intent to 'discover' evidence they could use against the defendant, however, there isn't any additional information, there is no evidence of wrong doing committed by the defendant, or any hidden assets, to be 'discovered' by the plaintiff and her attorney. One of the main interests of attorney Wallace was whether or not the defendant had anyone representing or 'assisting' her behind the scenes, i. e., an attorney. The deposition was folly and it is an undisputed fact that there is no evidence of a crime, fraud, embezzling, and attempts to hinder, delay, or defraud a creditor or anyone else in this case.

17. On March 14, 2013 the defendant submitted her First Request for Production of Documents to Steven M. Wallace, attorney for trustee Dana S. Frazier, that contained 28 clear, concise, comprehensive, succinct, requests for production of indisputable proof be submitted to the defendant by this trustee.

18. The trustee's response to all 28 requests were virtually identical with the statement of "The trustee objects to debtor's first (etc) request for the reason that it is argumentative, vague, and ambiguous" which is false, untrue, and not a valid legal objection. It is merely a delaying tactic for failure to provide requested evidence to support their claims and allegations against the defendant. It is an indisputable fact this trustee and her attorney cannot prove their accusations of bankruptcy fraud, embezzling, against the defendant, there have no legitimate, legal reason to revoke the defendants discharge, and a summary judgment should be granted in favor of the defendant/debtor, Mary Ann Hood.

19. The defendant has recently received three (3) letters from American Express Company credit bureau unit that indisputably states an account with them no longer exists, is not a part of their records, and has now been totally and completely expunged from their records. The existing accounts were closed in June 2004, nine (9) years ago.

There has never been an account with American Express Centurion **Bank,** statements submitted as proof were **fabricated** AFTER the defendants accounts were closed, and the 'agreement' they allege as proof the defendant was under, did not exist in 2004, **since the Agreement they submitted as evidence was published for the first time in 2005, a full year AFTER the defendants American Express accounts were closed by the defendant, and IS a matter of record.** The only agreement the defendant had with American Express Company was dated 1985, NOT 2005. The creditor should never have been allowed to stand as submitted by the court. The alleged account with AECB did not exist but was falsely fabricated by AECB.

It is therefore deemed admitted the trustee has no evidence in support of their complaints which proves without doubt their complaints against the defendant are frivolous, malicious, and vexatious prosecution of a defendant who is not guilty of wrong doing. Therefore, the trustee complaints, case no. 11-3268 & 11-3303 must be immediately dismissed due to a lack of legitimate, legal, cause of action and is blatantly an abuse of process perpetrated by this trustee, and summary judgment must be granted in favor of the defendant forthwith.

## ARGUMENT

Summary judgment should be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. That the complaints filed by the trustee demonstrate they are submitted without evidence and in one instance, 11-3303 filed August 17, 2011, is time barred pursuant to the Statute of Limitations and should have been denied or dismissed as a matter of law. That the defendant has not committed any act or engaged in any conduct which would indicate an attempt to liquidate assets or commit other acts of subterfuge to hinder, delay, or cheat any alleged creditor or any court. Cassesso v Commissioner of Correction, 390 Mass. 419, 411 (1983); Community National Bank v Dawes, 369 Mass. 550, 553, (1976)

The defendant and moving party for summary judgment does not have the burden of proof at trial. This burden may be met by either submitting affirmative evidence that negates an essential element of the plaintiff's case, or by the defendant demonstrating that proof is unlikely to be forthcoming at trial Flesner v Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp. 410 Mass, 706, 7156

(1991).    **If the plaintiff opposes the motion for summary judgment they must respond and submit material fact as evidence..  Pederson, supra at 17.**

I.  Summary judgment should be granted on Count 1 of the motion because the defendant had no obligation to notify anyone that she had added her sons name to the property in question since this was done in 6/25/2007, two years and one week prior to the defendant filing a Chapter 7 on 6/30/2009.  The defendant had no plans on filing bankruptcy of any kind consequently the act of adding her sons name to the deed to the defendant's home was without an ulterior motive nor does it exhibit an act of subterfuge as the trustee attempts to claim.  The Recorder of Deeds office guaranteed the defendant that adding her son's name to the deed to her property was perfectly acceptable and legal, and was not a sale of the property in the State of Illinois.  The defendant has been provided title insurance on this property in question guaranteeing the title is free, clear, without a cloud, and legitimate.  The deed is a true, duly executed and notarized Quit Claim Deed according to the laws for the State of Illinois.  The defendant still lives in, pays the taxes, and maintains the property as her permanent place of residence since May 2005.

A.  The defendant cannot be held liable for having contracted a serious heart condition prior to changing the deed to her property, the catalyst to the defendant's actions.  Contracting Congestive Heart Failure, Ischemic Cardiomyopathy and undergoing approximately 9 heart related procedures is not under the defendant's control for which liability can be attached. Illness is a natural occurrence for which there is no liability.  It is explicit that for such a natural occurrence the defendant cannot be held liable for her actions and efforts to provide for her final expenses at the time of her death, an effort to 'get her house in order' by adding her son's name to the deed to her home to allow the home to be sold as quickly as possible following her death.

B.  The defendant cannot be held liable and alleged to be culpable for breaching any statute or committing a fraudulent transfer since the only alleged creditor is AECB in the amount of $5021.99, and obviously not a legitimate reason to fraudulently transfer property, and to which the defendant has attempted to pay on more than one occasion since February 9, 2011  in order to close the case during the past two years. However,  in spite of the defendants actions this trustee has rejected all attempts to settle and close the case, retained the services of an attorney approximately three (3) months AFTER the

offers to pay the claim, who has fabricated alleged 'services rendered' in the amount of $13,613.30. The Chapter 7 has now been encumbered drastically by the trustee and her attorney by increasing it from $5021.99 to just under $25,000.00, and this has been deliberately orchestrated by the trustee, Dana S. Frazier and her attorney, Steven M. Wallace to deprive the defendant of her home, all for the sake of unjust enrichment by this trustee and her attorney in their attempts to and by defrauding the defendant of any alleged asset for selfish, monetary reasons only, by filing fraudulent claims against the defendant without a cause of action or merit.

C. The defendant never entered into any sales agreement for the property in question. It has been approximately six and one half (6.5) years from the date of the first Quit Claim Deed of 6/25/2007, obviously and clearly apparent the change in the deed was NOT an effort to sell or liquidate any property whatsoever, but done merely to expedite the sale of her home, and the possibility of probate at the time of the defendants death which is referenced in the defendants Last Will & Testament dated and duly executed in June 2006.

D. Illinois Supreme Court Rule 137 requires that there be proper investigation, before a lawsuit is filed in Illinois. Furthermore, this rule requires that any lawsuit filed be "well grounded in fact and warranted by existing law." Failure to follow this rule can result in a lawyer and/or the client being fined for costs and attorney's fees. Filing a lawsuit out of mere anger and retaliation, without having suffered any damages is definitely a violation of Rule 137. Filing a lawsuit merely to gain an advantage in another court fight is definitely frowned upon in Illinois and is a violation of the rule. Furthermore, the facts of any conflict or dispute should be written down. **There is no room for guessing when filing or hearing a lawsuit. Sanctions would be warranted against such attorneys. Dana S. Frazier and Steven M. Wallace are such attorneys. The trustee's actions could be construed as deliberate elder abuse, retaliation, and vengeance, visited upon the defendant.**

E. **Standards for Imposing Lawyer Sanctions:** While these standards will improve the operation of lawyer discipline systems, there is an additional factor which cannot be overlooked. It is assumed that all instances of unethical conduct will be brought to the attention of the disciplinary system. Experience indicates that such is not

the case. In 1970, the ABA Special Committee on Evaluation of Disciplinary Enforcement (the Clark Committee), was charged with the responsibility for evaluating the effectiveness of disciplinary enforcement systems. The Clark Committee concluded that one of the most significant problems in lawyers discipline was the reluctance of lawyers and judges to report misconduct. That same problem exists today as in this case. *It cannot be emphasized strongly enough that lawyers and judges must report unethical conduct to the appropriate disciplinary agency. Failure to render such reports is a disservice to the public and the legal profession.*

F. Judges in particular should be reminded of their obligation to report unethical conduct to the disciplinary agencies. Under the ABA Code of Judicial Conduct, a judge is obligated to "take or initiate appropriate disciplinary measures against a judge or lawyer for unprofessional conduct of which the judge may become aware". Frequently, judges take the position that there is no such need and that errant behavior of lawyers can be remedied solely by use of contempt proceedings and other alternative means. It must be emphasized that the goals of lawyer discipline are not properly and fully served if the judge who observes unethical conduct simply deals with it on an ad hoc basis.

## CONCLUSION

The defendant's Motion for Summary Judgment should be granted.

Summary judgment should be granted because the defendants' actions with the property in question as stated in the Argument, were in excess of two years BEFORE her petition for bankruptcy. The defendant did not liquidate or try to sell assets as claimed and alleged by the trustee and her attorney. It is now in excess of six (6) plus years and more, and it is obvious and clearly apparent the defendant's actions were open and above board and there was no thought or justification to hide assets from this creditor or that the defendant did sell her property. There is only ONE alleged creditor in the amount of $5021.99, American Express Centurion Bank, which should have been denied by this court as unproved or confirmed as claimed to be a valid claim. American Express Company states this account has been paid, closed, and the records purged, *consequently AECB is not a valid claimant in this case.* The bogus claim of AECB is definitely not a reason to hide, attempt to hinder, delay or conceal any asset from the one creditor in that the creditor had not attempted to even contact the defendant since 2004 after the

24

defendant closed her account with American Express Company.  The defendant still maintains the very same address as the property in question as her sole and permanent address, pays the property taxes, and has since May 2005.

The defendants' rights to her homestead interest in the property order denied by this court should be restored as a matter of law since they were denied due the trustee's error submitting incorrect and false information to this court, and provided by this trustee, Dana s. Frazier, who failed to perform her duty as an attorney to properly investigate her claim as required, *prior* to submitting it to this court by claiming the defendant has violated an alleged law in Illinois of a property having to be recorded, and the error further compounded by the court who did not confirm or verify the trustee's allegation and accusation against the defendant. There is no recordation act for the State of Illinois.

The trustee has no legitimate cause of action against the defendant. The attorney Wallace held a deposition which was nothing but a witch hunt to try to establish proof of the trustee's accusations and allegations against the defendant, and failed.  There is nothing to be found that will prove wrong doing committed by this defendant.

The defendant is entitled to judgment; that there is no genuine dispute as to any material fact, and she is entitled to judgment as a matter of law FED. R. CIV. P. 56(a), unless the opposing party identifies specific facts, beyond the allegations or denials in their pleadings, that show a genuine issue for trial. FED. R. CIV. P. 56(e)(2). *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008). , and,

Finally, the money demanded by Dana S. Frazier was obtained January 26, 2011 and recorded February 9, 2011; is a matter of public record; the trustee was promptly and duly notified, and has been available for more than two years to pay the one creditor in the amount of $5021.99 in order to close this case no. 09-31704.  The trustee and her attorney have known of this Line of Credit since February 2011. This line of credit was available a full four months before the trustee filed her first adversary complaint on June 16, 2011, Case no. 11-3268. This defendant has been subjected to harassment, malicious prosecution, frivolous adversary complaints, abuse of process, and absolute abuse of power, with the trustee's intent to exert a maximum amount of pressure and stress upon the defendant to force her to capitulate to the trustee's demands for money for four (4)

years unnecessarily and without proof of any kind against the defendant of wrong doing. This is indisputable fact.

    **WHEREFORE**, the defendant, Mary Ann Hood, respectfully requests the court grant this motion for summary judgment.

                Respectfully submitted,

                Mary Ann Hood, Defendant, Pro Se
                2003 Clawson Street
                Alton, IL 62002

## CERTIFICATE OF SERVICE

    The undersigned certifies that a true and correct copy of the foregoing instrument was sent via the electronic email to:   Steven M. Wallace, attorney for trustee, Dana S. Frazier, to the Kunin Law Offices, LLC, 1606 Eastport Plaza Drive, Suite 110, Collinsville, Illinois 62234, this ___20____ day of May 2013.

## LIST OF AUTHORITIES

**Bd.** *of Regents v. Roth,* 408 **U.S.** 564 **(1972)**

*Brenner v. Manson,* **383 U.S.** 519 **(1966)**
*Brotherton v. Cleveland,* 923 F.2d 477 (6th Cir. 1991)
*Bruning v. Hirose,* 161 F.3d 681 (Fed. Cir. 1998)
*Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261 (1990)
*Davis v. Davis,* 842 S.W.2d 588 (Tenn. 1992) *Eisenstadtv. Baird,* 4 05 U.S. 438 (1972
*Green v. Comm'r,* 74 T.C. 1229 (1980)
*Griswoldv. Connecticut,*3 81 U.S. 479 (1965) *Hecht v. Superior Court,* 16 Cal. App. 4th 836, 20 Cal. Rptr.
2d 275  (Ct. App. 1993) *Hybritech Inc. v. Monoclonal Antibodies, Inc.',* 802 F.2d 1367 (Fed. Cir. 1986) *In re Brana,*5 1 F.3d 1560 (Fed. Cir. 1995)
*In re Citron,*3 25 F.2d 248 (C.C.P.A. 1963)
*In re Deuel,* 51 F.3d 1552 (Fed. Cir. 1995)

*In re Isaacs*, 347 F.2d 887 (C.C.P.A. 1965)
*In re Joly,* 376 F.2d 906 (C.C.P.A. 1967)
*In re Kirk,* 376 F.2d 936 (C.C.P.A. 1967)
*Moore v. Regents of the Univ. of Cal., 51* Cal. 3d 120, 793
P.2d 479,271 Cal. Rptr. 146 (1990)
*Nelson v. Bowler*, 626 F.2d 853 (C.C.P.A. 1980)
*PlannedP arenthoodv . Casey, 505* U.S. 833 (1992)
*Raytheon Co. v. Roper Corp.,* 724 F.2d 951 (Fed. Cir. 1983)
*Reno v. Flores,* 507 U.S. 292 (1993)
*Skinner v. Oklahoma,* 316 U.S. 535 (1942)
*Troxel v. Granville,* 530 U.S. 57 (2000)
*Vacco v. Quill,* 521 U.S. 793 (1997)
*Washington v. Glucksberg,* 521 U.S. 702 (1997)
*Winston v. Lee*, 470 U.S. 753 (1985).


*AFL-CIO v. FEC*, 333 F.3d 168 (D.C. Cir. 2003)
*Am. Commc'ns Ass'n, CIO v. Douds,* 339 U.S. 382 (1950
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986
*Averill v. City of Seattle* , 325 F. Supp. 2d 1173 (W.D. Wash. 2004
*Brown v. Socialist Workers '74 Campaign Committee (Ohio),*
459 U.S. 87 (1982
*Buckley v. Valeo*, 424 U.S. 1 (1976
*Citizens United v. FEC*, 30 S. Ct. 876 (2010
*Dickerson v. United States*, 530 U.S. 428 (2000)
*Doe v. Reed*, 661 F. Supp. 2d 1194 (W.D. Wash. 2009)
*Doe v. Reed*, 586 F.3d 671 (9th Cir. 2009)6
*Doe v. Reed*, 130 S. Ct. 2811 (2010)
*Familias Unidas v. Briscoe*, 19 F.2d 391 (5th Cir. 1980)
*FEC v. Hall-Tyner Election Campaign Comm.*, 678 F.2d 416 (2d Cir. 1982).
*Gill v. Office of Pers. Mgmt.*,6 99 F. Supp. 2d 374 (D. Mass. 2010)
*Greenwood v. CompuCredit Corp.*, 615 F.3d 1204 (9th
*lingsworth v. Perry,*130 S. Ct. 705 (2010)
*Keyishian v. Bd. of Regents*, 3 85 U.S. 589 (1967)
*McConnell v. FEC*, 51 F. Supp. 2d 176 (D.D.C. 2003)
*McConnell v. FEC*, 540 U.S. 93 (2003)
*NAACP ex rel. Patterson v. Alabama*, 357 U.S. 449 (1958)
*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964).
*Perry v. Schwarzenegger,*
704 F. Supp. 2d 921 (N.D. Cal. 2010)
*Perry v. Schwarzenegger,*
591 F.3d 1147, 1159–60 (9th Cir. 2010), *cert. dismissed*, 130 S. Ct. 2432 (U.S. 2010)
*Romer v. Evans*, 517 U.S. 620 (1996)
*Texas v. Johnson*, 491 U.S. 397 (1989)
*United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803 (2000
*Whitney v. California*, 274 U.S. 357 (1927).



March 8, 2013

American Express Credit Bureau Unit
PO Box 981537
El Paso, TX 79998-1537

     In re:  Account ending in: 31000
              Optima Platinum Card

American Express Customer Care:

I am in receipt of your letter dated February 27, 2013 in reference to my disputing
the alleged amount owed on the above referenced credit card.

This card was voluntarily closed in June 2004 by the card holder.  At the time of
closing the <u>highest balance</u> on that card was $1271.00 as noted on the credit report
enclosed.

I had not received any statements from American Express Company since 2004.  In
June 2009, due to severe illness, the card holder filed a Chapter 7.  American
Express Centurion Bank filed a 'proof of claim' against the Chapter 7 in the
amount of $5021.99.  The writer had never heard of American Express Centurion
Bank prior to their filing a claim, much less had an account with them.

**<u>There has never been an account  with American Express Centurion Bank.</u>**

I have telephoned American Express and  requested copies of all statements,
including signed sales slips and/or orders,  during the life of the credit card on three
(3) separate occasions which American Express said they would forward, but failed
to send.  I then contacted the FDIC in Salt Lake City, Utah asking for their
cooperation in obtaining these statements.  The only statements received were
statements dated several years AFTER the American Express Account was
CLOSED and had been closed for quite some time, minus any signed sales slips,
orders, or other legitimate supporting documentation that the statements submitted
were legitimate statements.  The 'proof of claim' was allowed to stand as submitted
even though there was no legitimate proof of this alleged account since the card
holder had never had an account with American Express Centurion Bank.

**All cards with American Express Company held by the card holder were cancelled
in <u>June 2004</u>.  No additional transactions were placed against any card AFTER  the
cards were closed, however, new <u>alleged</u> charges appeared that American Express**

could not prove by submitting copies of sales slips signed by the card holder, and could not submit any signed orders or sales slips to prove the purchases were made by the card holder. The card holder states firmly that she did not make any purchases against any credit card after the cards were closed.

American Express Centurion Bank should direct their legal department to issue a Motion to Dismiss their claim in the amount of $5021.99, as unsupported and undocumented, without proof since the card holder did not have an account with American Express Centurion Bank at any time and the cards that I did have had been closed in 2004 and the credit bureau accounts clearly marked "Paid,Closed/Never Late", showing no monthly payments due.

Your legal department should issue a **Motion to Dismiss Claim:**

> **( in the amount of $5,021.99, against**
> **Chapter 7 Case no. 09-31704),**
> **(Adv. Case No. 11-3268 & 11-3303)** and send to:

> **Court Clerk**
> **Southern District of Illinois,**
> **750 Missouri Avenue**
> **E. St. Louis, IL. 62201**

My name is:   Mary Ann Hood
              3739-996072-31000
              2003 Clawson Street,
              Alton, Illinois 62002
              (618) 208-7997

There is  more to take care of by American Express than a mere dispute of this account since it has caused a tremendous amount of harm, and expense in attorney fees, time, doctors bills, heart related procedures, stress and anxiety, over an account that is incorrect and in dispute since 2004.  I am diagnosed with Ischemic Cardiomyopathy, Congestive Heart Failure, with two stints, and one Pacemaker/Defibrillator implant and have been dealing with this fabricated claim for almost four years now, since 6/30/2009.  It is time for it to stop.

If not taken care of  the FDIC has been notified and as soon as the case is out of litigation a formal complaint will be filed asking the FDIC to investigate and if American Express is found guilty, AGAIN, for Unfair Business Practices, you will be ordered to refund those funds if Mary Ann Hood is ordered to pay the claim and possibly other damages.  For all concerned it is more expedient to file a Motion to Dismiss.

I have enclosed a copy of the Credit Bureau sheet showing the highest balance of $1271.00 at the time the cards were closed.   There isn't any amount listed as 'owed'. The cards were marked "Paid/Closed/Never Late".

Please respond as soon as possible.  I look forward to your reply.

Very truly yours,


Mary Ann Hood


:mah
Enclosures

American Express
Credit Bureau Unit
PO Box 981537
El Paso, TX 79998



*Letter I*

4409L0S19LAB09413


Maryann Hood
2003 Clawson Street
Alton, IL 62002-4

April 03, 2013

Account Identifier Number (s):    008211106018392882

*COPY*

Social Security Number: XXX-XX-0000

Dear Maryann Hood,

We are writing to let you know that we have received your recent inquiry regarding the reporting of the American Express account under the account identifier number (s) shown above. We are unable to locate the American Express account since it has been purged from our records.

We have therefore requested that the credit reporting agencies listed below delete all the information pertaining to the account identifier number, from your credit report.

It may take up to thirty days for the reporting agencies to comply with our request and we appreciate your patience. Please use this letter as verification until your file has been updated.

Sincerely,

*J. Hamilton*

J. Hamilton
Credit Bureau Unit
American Express

LAB
00
037
04409
001
001

| TRANS UNION CONSUMER RELATIONS | EQUIFAX CREDIT INFO | EXPERIAN | D&B |
|---|---|---|---|
| P.O. Box 1000 | PO Box 740241 | P.O. Box 2002 | 899 Eaton Avenue |
| Chester, PA 19022 | Atlanta, GA 30374 | Allen, TX 75013 | Bethlehem, PA 18025 |
| 800-888-4213 | 800 685 1111 | 1-888 EXPERIAN (1 888 397 3742) | 800-234-3867 |
| www.transunion.com | www.equifax.com/fcra | www.experian.com/reportaccess | **(For OSBN Accounts Only)** |

NSIPCCBR0023001

American Express
Credit Bureau Unit
PO Box 981537
El Paso, TX 79998

*Letter 1*


Maryann Hood
2003 Clawson Street
Alton, IL 62002

April 03, 2013

Account Identifier Number (s):    008211106018592882

Social Security Number: XXX-XX-0000

Dear Maryann Hood,

We are writing to let you know that we have received your recent inquiry regarding the reporting of the American Express account under the account identifier number (s) shown above. We are unable to locate the American Express account since it has been purged from our records.

We have therefore requested that the credit reporting agencies listed below delete all the information pertaining to the account identifier number, from your credit report.

It may take up to thirty days for the reporting agencies to comply with our request and we appreciate your patience. Please use this letter as verification until your file has been updated.

Sincerely,

*J. Hamilton*

J. Hamilton
Credit Bureau Unit
American Express

TRANS UNION
CONSUMER
RELATIONS
P.O. Box 1000
Chester, PA 19022
800-888-4213
www.transunion.com

EQUIFAX
CREDIT INFO
PO Box 740241
Atlanta, GA 30374
800 685 1111
www.equifax.com/fcra

EXPERIAN
P.O. Box 2002
Allen, TX  75013
1-888 EXPERIAN (1 888 397 3742)
www.experian.com/reportaccess

D&B
899 Eaton Avenue
Bethlehem, PA 18025
800-234-3867
**(For OSBN Accounts Only)**

NSIPCCBR0023001

**American Express**
Credit Bureau Unit
PO Box 981537
El Paso, TX 79998



*Letter 3*

Maryann Hood
2003 Clawson Street
Alton, IL 62002-4717

April 03, 2013

Account Identifier Number (s):   3499906710286543

Social Security Number: XXX-XX-0431

Dear Maryann Hood,

This is to respond to your recent inquiry regarding reporting of your American Express credit history under the above account identifier number(s).  We utilize this number (s) when furnishing information to credit reporting agencies about the following American Express account, which we show only the last 5 digits below:

XXXX-XXXXXX-31000

We are pleased to advise you that we have requested the credit reporting agencies listed below to delete all information pertaining to the account identifier number from your credit report.

We appreciate your patience as it may take up to thirty days for the reporting agencies to comply with our request.  Please use this letter as verification until your file is updated.

It is a pleasure to be of service to you.   If we can be of further assistance, please write to us at the above listed address.

Sincerely,

*J. Hamilton*

J. Hamilton
Credit Bureau Unit
American Express

| | | | |
|---|---|---|---|
| **TRANS UNION CONSUMER RELATIONS** P.O. Box 1000 Chester, PA 19022 800-888-4213 www.transunion.com | **EQUIFAX CREDIT INFO** PO Box 740241 Atlanta, GA 30374 800 685 1111 www.equifax.com/fcra | **EXPERIAN** P.O. Box 2002 Allen, TX  75013 1-888 EXPERIAN (1 888 397 3742) www.experian.com/reportaccess | **D&B** 899 Eaton Avenue Bethlehem, PA 18025 800-234-3867 **(For OSBN Accounts Only)** |

NSIPCCBR0001001